**NOT FOR PUBLICATION**                                    **CASE CLOSED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

GLENN HEMBERGER,

                       Plaintiff,

      v.

E*TRADE FINANCIAL
CORPORATION AND JOHN DOES 1-5
(FICTITIOUS ENTITIES),

                  Defendants.

Civil Action No. 07-1621 (SDW)

**OPINION**

November 19, 2007

**WIGENTON, District Judge**

       Before the Court is a motion to dismiss the complaint and compel arbitration (the "Motion"), pursuant to Federal Rule of Civil Procedure 12(b)(1) and Sections 3 and 4 of the Federal Arbitration Act ("FAA"), filed by E*Trade Financial Corporation ("Defendant"). Glenn Hemberger ("Plaintiff") filed opposition to the Motion. The Motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, we grant Defendant's Motion and compel arbitration of this matter.

**Jurisdiction and Venue**

       This Court has jurisdiction under 28 U.S.C. § 1332 to decide whether the disputed arbitration agreement is valid and enforceable. Venue is proper under 28 U.S.C. § 1391(a).

**Background**

       The following allegations are drawn from the complaint, which was filed in this Court on April 5, 2007 when this case was removed ("Complaint"), and offer of employment dated March 2, 2006 ("Employment Offer"). (Employment Offer, Lunetta Cert. Ex. A.)

On March 4, 2006, Glenn Hemberger ("Plaintiff") accepted and signed the Employment Offer to work as a Financial Service Representative (phone and email associate) for E*Trade Financial Corporation's ("Defendant") Jersey City office. (Employment Offer, Lunetta Cert. Ex. A.) On or around Plaintiff's hire date, Plaintiff claims he was told he would be a team manager for Customer Service when the position became available. (Compl. ¶ 4.) Plaintiff contends that the manager position required an employee to have Series 7, 63 and 24 licenses, and Plaintiff held such licenses from the New York Stock Exchange ("NYSE"). (Compl. ¶¶ 3, 14.)

Plaintiff informed Defendant that he was receiving treatment for a panic disorder. (Compl. ¶ 6.) Plaintiff alleges that he was treated rudely by supervisors and personnel on many occasions because of his panic disorder. (Compl. ¶ 8.) In April 2006, a trainer/supervisor told Plaintiff to "get out of her face" during a broker training class. (Compl. ¶ 7.) On other occasions, co-workers defamed and ridiculed Plaintiff to the knowledge of supervising personnel. (Compl. ¶ 10.) Due to the abuse and commentary, Plaintiff underwent continuing medical treatment and was hospitalized at Bayonne Medical Center for emotional distress. (Compl. ¶ 16.)

In May 2006, Plaintiff was passed over for promotion to manager. (Compl. ¶ 9.) In July 2006, Defendant appointed a new email team manager who did not hold a Series 24 license. (Compl. ¶¶ 11, 13.) Plaintiff contends that under the NYSE Rules, an individual who does not hold a Series 24 license cannot supervise anyone who holds such license. (Compl. ¶ 12.) Plaintiff brought this perceived illegal activity to the attention of Defendant and was told by management that they would follow up on the NYSE Rules. (Compl. ¶¶ 13, 15.) Plaintiff claims the NYSE Rules were never checked and the email manager remained in position. (Compl. ¶¶ 13, 15.)

In September 2006, the new email manager was informed of Plaintiff's panic disorder. (Compl. ¶ 17.)  Plaintiff alleges that employees "looked up his medication on the computer and ridiculed him." (Compl. ¶ 17.)  On November 6, 2006, Plaintiff was hospitalized for a second time at Bayonne Medical Center.  (Compl. ¶ 18.)  Plaintiff alleges that on November 22 and December 2, 2006, he was humiliated by members of the email team and was informed by a manager that Plaintiff was "hated" by his supervisors and others.  (Compl. ¶¶ 19, 20.)  On December 12, 2006, Plaintiff was treated again for his panic disorder and was thereafter told he would be placed on suspension.  (Compl. ¶ 21.)  On December 13, 2006, Plaintiff was terminated.  (Compl. ¶ 21.)

On February 20, 2007, Plaintiff filed suit against Defendant in the Superior Court of New Jersey alleging violations of the New Jersey Law Against Discrimination ("NJLAD") N.J.S.A. 10:5-1, *et seq.*; the New Jersey Conscientious Employee Protection Act ("CEPA") N.J.S.A. 34:19-1 to 34:19-8; and infliction of emotional distress.  (Compl. ¶¶ 30, 42, 50.)  Defendant filed a Notice of Removal on April 5, 2007, by which this case is before this Court.  On April 27, 2007, Defendant filed a motion to dismiss the complaint and compel arbitration (the "Motion").

**Discussion**

Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction over the allegations in the complaint.  *Mortensen v. First Federal Sav. and Loan Ass'n.*, 549 F.2d 884, 891 (3d Cir. 1977).  In deciding a Rule 12(b)(1) motion to dismiss, "the Court is free to weigh the evidence and satisfy itself whether it has the power to hear the case."  *Mortensen*, 549 F.2d at 891.  As such, "no presumption of truthfulness attaches to the

allegations in the complaint," and the court can consider materials beyond the pleadings as long as they are properly before the court.  *Continental Ins. Co. of N.J. v. U.S.*, 335 F. Supp. 2d 532, 535 (D.N.J. 2004) (citing *Anjelino v. New York Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999)).  The plaintiff has the burden to prove that the court has subject matter jurisdiction.  *Med. Soc'y of N.J v. Herr*, 191 F. Supp. 2d 574, 578 (D.N.J. 2002) (citing *Gould Electronics*, 220 F.3d at 178).

The Federal Arbitration Act Applies to the Arbitration Agreement

Arbitration agreements arising out of contracts involving commerce are governed by the Federal Arbitration Act ("FAA").  The FAA has been extended to grant district courts the authority to enforce arbitration agreements in employment contracts as long as the provision has a slight nexus to interstate commerce.  *Gilbert v. Fox & Roach, LP*, No. 05-668 (RBK), 2005 WL 2347121, at *2 (D.N.J. Sept. 23, 2005) (citing *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 26 (1991); *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998)).  Employment in "interstate commerce" has been broadly defined to include "working in commerce,[] producing goods for commerce, or []engaging in activity that affected commerce."  *Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 201 (1956); *see also Bleumer v. Parkway Ins. Co.*, 277 N.J. Super. 378, 390, 649 A.2d 913, 919 (Law Div. 1994); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-77 (1995) (holding that the broad term "involving commerce" is synonymous with the term "affecting commerce" to allow Congress to exercise its commerce power to the fullest).

Here, the FAA applies to the arbitration agreement because both Defendant's line of business and Plaintiff's employment duties involve participation in interstate commerce on a daily basis.  Defendant is involved in interstate commerce by providing services and having offices

throughout the United States.  (Def. Mem. of Law at 3.)   Plaintiff, as a Financial Service Representative for Defendant, was required to communicate with Defendant's customers throughout the country daily.  (Def. Mem. of Law at 3.)  As such, both Plaintiff's employment duties and Defendant's line of business fall within the broad definition of interstate commerce, and the FAA governs the arbitration agreement.

The Federal Arbitration Act and New Jersey Law Require Arbitration of Plaintiff's Claims

Arbitration agreements governed by the FAA are "valid, irrevocable, and enforceable" unless grounds to revoke the contract exist at law or in equity.  9 U.S.C. § 2; *see also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (holding "contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2."). Therefore, whether a party may compel arbitration under the FAA is a "gateway" question that requires judicial resolution. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003).  The court has jurisdiction to decide whether a valid and enforceable arbitration agreement exists and applies to the parties' disputes.  9 U.S.C. §§ 3, 4.  The court should apply state contract principles to make this determination.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002).  A valid and enforceable arbitration agreement will divest the court of subject matter jurisdiction over the arbitrable disputes.  9 U.S.C. § 2.

Here, Plaintiff argues that the Employment Offer was a contract of adhesion, and therefore the arbitration agreement is unconscionable because it failed to explicitly put him on notice that his statutory claims, including the NJLAD, were precluded forever.  (Pl.'s Opp. at 3-6.)  Specifically,

Plaintiff claims that the "language was insufficient to constitute a clear, knowing and unmistakable waiver of his right to pursue [such] claims in a judicial forum," and the arbitration agreement should not be enforced.  (Pl.'s Opp. at 3-6.)

A.     *The Arbitration Agreement is Valid*

A valid arbitration agreement is one that clearly and unambiguously establishes that an employee intended to waive the right to sue.  *Sarbak v. Citigroup Global Markets, Inc.*, 354 F. Supp. 2d 531, 537-38 (D.N.J. 2004).  The New Jersey Supreme Court has set a high threshold for the language required to constitute a clear and unambiguous waiver.  *Gilbert*, 2005 WL 2347121, at *3. An arbitration agreement must indicate to an employee that his or her federal and state judicial remedies are precluded forever and claims are resolved solely by arbitration.  *Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 168 N.J. 124, 135, 773 A.2d 665, 672 (N.J. 2001) (citing *Alamo Rent A Car, Inc. v. Galarza*, 306 N.J. Super. 384, 394, 703 A.2d 961 (App. Div. 1997)).  Courts have held arbitration agreements valid even where they do not "refer specifically to the LAD or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights."  *Sarbak*, 354 F. Supp. 2d at 541 (citation omitted); *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 95, 800 A.2d 872, 883 (N.J. 2002) (holding that an employment application containing an agreement to arbitrate claims arising out of employment was valid and applicable to statutory employment claims, including the NJLAD, even though the agreement did not explicitly reference statutory claims); *Great Western Mortg. Corp v. Peacock*, 110 F.3d 222, 231 (3d Cir. 1997) (finding that the employee had waived her right to a jury trial for resolution of state claims, including the NJLAD, by agreeing to arbitrate), *cert. denied*, 522 U.S. 915 (1997).

Here, the arbitration agreement meets New Jersey's high standard and is valid. The arbitration agreement states in relevant part:

> In the event of any *dispute or claim* arising out of or relating to *your employment relationship* . . . or the *termination of your employment* with the Company for any reason (including, but not limited to, any claims of breach of contract, wrongful termination or age, sex, race, national origin, *disability*, religious or other *discrimination*, *harassment* or *retaliation*) (collectively referred to hereafter as "Disputes"), you and the Company agree that all such Disputes shall *be fully, finally and exclusively resolved by binding arbitration* to the fullest extent permitted by law . . . . You and the Company hereby *waive your respective rights to have any Disputes tried to a judge or jury.*

(Employment Offer, Lunetta Cert. Ex. A.) (emphasis added). Plaintiff's claims for retaliation, emotional distress and discrimination on the basis of an alleged disability are specifically listed within the terms of the arbitration agreement. The agreement also clearly conveys that the parties are waiving their right to sue and to be heard by a judge or jury.

Further, the arbitration agreement was conspicuous and sufficient to put Plaintiff on notice that he was agreeing to it. The arbitration agreement was comprised of one clause, within one document, and was not hidden. In fact, the arbitration agreement was located just above the place where Plaintiff initialed the Employment Offer, with no text between the initials and the agreement. The District Court of New Jersey has determined that an almost identical arbitration agreement provided sufficient notice to a plaintiff and was valid. *See Sarbak*, 354 F. Supp. 2d at 539.

B.    *The Arbitration Agreement is Enforceable*

A valid agreement to arbitrate employment disputes is binding on an employee who has knowingly waived the right to bring such disputes before a court and has clearly agreed to the terms

7

of the arbitration agreement. *Sarbak*, 354 F. Supp. 2d at 537 (citations omitted).  Under New Jersey law, a valid waiver is only enforceable when it "results [] from an explicit, affirmative agreement that unmistakably reflects the employee's assent." *Leodori v. CIGNA Corp.*, 175 N.J. 293, 303, 814 A.2d 1098, 1105 (2003), *cert. denied*, 540 U.S. 938 (2003); *see, e.g.*, *Garfinkel*, 168 N.J. at 135 (instructing that "the Court will not assume that employees intend to waive [their] rights unless their agreements so provide in unambiguous terms"); *Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ.*, 78 N.J. 122, 140, 393 A.2d 267, 275 (1978) (holding that a "waiver must be clearly and unmistakably established" to be given effect); *Alamo*, 360 N.J. Super. at 393-95 (observing that clear and unequivocal language in a waiver clause "more fully ensur[es] that a waiver of statutory remedies is indeed knowing and voluntar[y]"); *Martindale*, 173 N.J. at 96-97 (holding that clear and unambiguous language of the arbitration agreement was enough to determine plaintiff read and understood the agreement before signing it).  Assent of the parties is determined by express intent in the arbitration agreement rather than actual intent, *Garfinkel*, 168 N.J. at 135 (citations omitted); thus, "[a] party's signature to an agreement is the customary and perhaps surest indication of assent." *Leodori*, 175 N.J. at 306-07.  "Absent a showing of fraud or mental incompetence, 'a person who signs a contract cannot avoid his obligations under it by showing that he did not read what he signed.'" *Sarbak*, 354 F. Supp. 2d at 541.

Here, Plaintiff's signature and initials on the clear and conspicuous arbitration agreement establish that he intended to waive his right to have a judge or jury decide employment disputes. Plaintiff has failed to provide case law or a certification supporting his argument that he did not

knowingly and voluntarily waive his rights.  Consequently, it is not necessary to conduct further factual inquiry into this issue.  Therefore, the arbitration agreement is valid and enforceable.

C.    *Plaintiff's Claims of Contract of Adhesion and Unconscionability Fail*

The Supreme Court of the United States determined that "*mere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context*." *Gilmer*, 500 U.S. at 33 (emphasis added); *Young v. Prudential Insurance Co. of America, Inc*., 297 N.J. Super. 605, 621, 688 A.2d 1069 (App. Div. 1997) (holding that in *Gilmer*, the Supreme Court contemplated avoidance of arbitration agreements in the employment context "only upon circumstances more egregious than the ordinary economic pressure faced by every employee who needs the job.").  New Jersey Courts have adopted the Supreme Court's ruling in *Gilmer*. *Martindale*, 173 N.J. at 85.  In fact, "[v]irtually every court that has considered the adhesive effect of arbitration provisions in employment applications or employment agreements has upheld the arbitration provision contained therein despite potentially unequal bargaining power between employer and employee."  *Martindale*, 173 N.J. at 90-91 (where court rejected plaintiff's contract of adhesion argument when she provided no evidence that she requested changes to the agreement or that the employer would have refused to consider her for the position had she refused to agree to the arbitration clause) (citing *Seus v. John Nuveen & Co.*, 146 F.3d 175, 184 (3d Cir. 1998), *cert. denied*, 525 U.S. 1139 (1999) (holding that disparity in bargaining power did not result in a contract of adhesion); *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 367 (7th Cir. 1999) (determining that contracts based on unequal bargaining power or made on a take-it-or-leave-it basis are not made

9

void under state law); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 17 (1st Cir. 1999) (finding that absent fraud or oppressive conduct, arbitration under the agreement was permissible); *Nur v. KFC, USA, Inc.*, 142 F. Supp. 2d 48, 51-52 (D.D.C. 2001) (rejecting contract of adhesion argument where the arbitration agreement was not unduly burdensome, did not favor one party over the other and provided that the American Arbitration Association and FAA applied to the arbitration proceeding)).

Here, Plaintiff's general allegations of contract of adhesion and unconscionability are unsupported, thus they are insufficient to avoid enforcement of the arbitration agreement. Plaintiff cites no exceptional circumstances or economic hardships to distinguish this case from the numerous cases where agreements to arbitrate employment disputes have been upheld. The Employment Offer was not issued on a take-it-or-leave-it basis. Rather, Plaintiff was given five business days to review the Employment Offer and make a decision. (Employment Offer, Lunetta Cert. Ex. A.) Plaintiff does not submit any evidence that he attempted to negotiate the terms of the Employment Offer or that Defendant would have refused to hire Plaintiff if he did not agree to the terms of the Employment Offer. Further, terms like the payment of the arbitrator's fees and expenses, and the procedure for selection of a neutral arbitrator,[1] which are excluded from the Employment Offer, do

---

1 Although Plaintiff has not submitted any case law demonstrating that arbitration agreements must contain the terms listed on pages 5-6 of Plaintiff's opposition, the Court notes that most, if not all, of the terms listed are provided for in the American Arbitration Association's Employment Arbitration Rules and Mediation Procedures (Lunetta Supplemental Cert. Ex. D.), and the arbitration agreement in dispute provides that "[t]he arbitration will be conducted by the American Arbitration Association . . . ." Moreover, all of Plaintiff's issues can be addressed at arbitration, and Defendant has offered to "cover the required forum and arbitrator fees." (Def.'s Ltr., Lunetta Cert. Ex. C.)

not make the arbitration agreement invalid.  (Pl.'s Opp. at 5-6.)

**Conclusion**

For the foregoing reasons, the arbitration agreement in this matter is binding upon the parties and is irrevocable.  As such, the Court lacks subject matter jurisdiction over Plaintiff's NJLAD, CEPA and emotional distress claims.  Pursuant to Section 4 of the FAA, the Court directs the parties to proceed to arbitration in accordance with the terms of the arbitration agreement.  The Motion is hereby GRANTED.  An Order follows.

**S/Susan D. Wigenton, U.S.D.J.**

cc:   Judge Madeline Cox Arleo